## CRAMPTON v. O'MARA.

[No. 24,089. Filed May 16, 1923. Rehearing denied October 30, 1923.]

1. CONSTITUTIONAL LAW.—*Officers.*—*Statutes Disqualifying for Past Offenses.*—Acts 1921 p. 179, §§9142c-9142e Burns' Supp. 1921, disqualifying for office one who has been convicted of any violation of the laws of the United States for which the sentence imposed exceeds six months, and §7008 Burns 1914, declaring conviction of an infamous crime a ground of contest of election to office, do not contravene the provisions of the federal Constitution against *ex post facto* legislation and bill of attainder.  p. 553.

2. OFFICERS.—*Right to hold Office.*—*May be Taken Away.*—The right to hold office is not a natural or inherent right, and, if there is nothing in the fundamental law guaranteeing the privilege, then the legislature may take it away.  p. 555.

3. CONSTITUTIONAL LAW.—*Statutes Disqualifying Convicts from Holding Office.*—*Validity.*—*Statute.*—Section 8, Article 2 of the state Constitution confers on the General Assembly power to prescribe as a qualification for office that the officers shall not have been convicted of an infamous crime, and this power has been validly executed in §7008 Burns 1914 making it a ground for contest of an election that the contestee has been convicted of an infamous crime, and such disqualification is not additional punishment for the crime in a sense to make the statute *ex post facto.*  p. 555.

4. CRIMINAL LAW.—*Infamous Crime.—Definition.*—A crime punishable for a term of years in the penitentiary at hard labor is an infamous crime, and this definition of infamous crime by the Supreme Court of the United States has been adopted in this state.    p. 556.

5. OFFICERS.—*Disqualification for Office.—Infamous Crime.—Statute.*—The provision of §7008 Burns 1914, disqualifying for office one convicted of an infamous crime is not limited to infamous crimes against the laws of this state, but is applicable to persons guilty of infamous crimes against the laws of the United States and other states.    p. 557.

From Vigo Circuit Court; *John P. Jeffries*, Judge.

Action by Henry C. Crampton against Joseph O'Mara to contest the latter's election as city councilman.    From a judgment for defendant, the plaintiff appeals.    *Reversed.*

*Stimson, Stimson & Davis* and *J. T. Walker*, for appellant.

*Henry W. Moore*, for appellee.

TOWNSEND, J.—At the November, 1921, election, appellee was chosen councilman from the Sixth Ward of the city of Terre Haute, Indiana, for a term of four years, beginning in January, 1922.    Appellant, a voter, brought this suit to contest appellee's election.    A demurrer was sustained to the complaint.    This ruling is assigned as error.

On April 6, 1915, in the United States District Court for the District of Indiana, appellee was convicted of conspiring with others to deprive citizens of the United States of the right and privilege of voting at the general election for United States Senator and Representative to Congress, from the Fifth District of Indiana.    He was sentenced to serve one year and one day in the United States penitentiary at Leavenworth, Kansas. There was no appeal, no reversal, and no pardon.

This conviction is the basis of the contest in the present case.    By the complaint, not only chapter 83, Acts

1921 p. 179, §9142c *et seq.* Burns' Supp. 1921, is invoked, but also clause 3, §7008 Burns 1914, §4756 R. S. 1881, is relied upon. Chapter 83, *supra,* provides that one convicted of any violation of the laws of the United States for which the sentence imposed exceeds six months shall be disqualified. Clause 3, §7008 Burns 1914, makes it a ground of contest that the contestee "shall have been convicted of an infamous crime, such conviction not having been reversed nor such person pardoned at the time of such election." The validity of these statutes under the state and federal Constitutions is questioned. It is contended that they are *ex post facto* and, in their nature, bills of attainder.

If the language used in *Cummings* v. *State of Missouri* (1866), 4 Wall. 277, 18 L. Ed. 356, and in *Ex parte Garland* (1866), 4 Wall. 333, 18 L. Ed. 366, were applied in a broad sense, both acts in question would be void; but the Supreme Court of the United States has not so applied it. *Hawker* v. *New York* (1898), 170 U. S. 189, 18 Sup. Ct. 573, 42 L. Ed. 1002. Hawker had been convicted of the crime of abortion and, about twenty-three years later, the State of New York passed a law making it a misdemeanor for any one to practice medicine who had been convicted of a felony. He was convicted under this statute. On writ of error, the Supreme Court of the United States said: "Defendant relies largely on *Cummings* v. *State of Missouri,* 4 Wall. 277, and *Ex. parte Garland,* 4 Wall. 333. In the first of these cases a test oath, containing some thirty distinct affirmations respecting past conduct, extending even to words, desires and sympathies, was prescribed by the State of Missouri upon all pursuing certain professions or avocations; and in the second a similar oath, though not so far reaching in its terms, was required by act of Congress of those who sought

to appear as attorneys and counsellors in the courts of the United States. It was held that, as many of the matters provided for in these oaths had no relation to the fitness or qualification of the two parties, the one to follow the profession of a minister of the gospel and the other to act as an attorney and counsellor, the oaths should be considered not legitimate tests of qualification, but in the nature of penalties for past offenses. These cases were called to our attention in *Dent* v. *West Virginia, supra,* in which the validity of a statute of West Virginia imposing new qualifications upon one already engaged in the practice of medicine was presented for consideration. After pointing out the distinguishing features of those cases, this court summed up the matter in these words, p. 128:

" 'There is nothing in these decisions which supports the positions for which the plaintiff in error contends. They only determine that one who is in the enjoyment of a right to preach and teach the Christian religion as a priest of a regular church, and one who has been admitted to practice the profession of the law, cannot be deprived of the right to continue in the exercise of their respective professions by the exaction from them of an oath as to their past conduct, respecting matters which have no connection with such professions. Between this doctrine and that for which the plaintiff in error contends there is no analogy or resemblance. The constitution of Missouri and the act of Congress in question in those cases were designed to deprive parties of their right to continue in their professions for past acts or past expressions of desires and sympathies, many of which had no bearing upon their fitness to continue in their professions. The law of West Virginia was intended to secure such skill and learning in the profession of medicine that the community might trust with confidence those receiving

a license under authority of the State.'" Then analogous cases, *Ex parte Wall* (1882), 107 U. S. 265, and *Gray* v. *Connecticut* (1895), 159 U. S. 74, 15 Sup. Ct. 985, 40 L. Ed. 80, were cited and considered applicable to and decisive of Hawker's case.

We shall therefore be content with the interpretation put upon the Cummings and Garland cases by the Supreme Court of the United States, and hold that neither of the statutes under consideration in the present case violates any of the provisions of the federal Constitution.

The so-called right to hold office is not a natural or inherent right. It is a privilege which arises from the organization of our civil society. If there is

2. nothing in our fundamental law guaranteeing the privilege, then the people, through their official agency, the legislature, may take it away.

Let us now consider our own constitutional limitation as applied to the two statutes in question. Article 2 of our Constitution, on the subject of

3. suffrage and elections, has fourteen sections, all of which are self executing, except §8 and a part of §14. Section 8, which is applicable to the case at bar, provides: "The general assembly shall have power to deprive of the right of suffrage, and render ineligible, any person convicted of an infamous crime." The language originally adopted and referred to the Committee on Revision and Phraseology was: "The general assembly shall have power to exclude from electing, or being elected, any person convicted of any infamous crime." 2 Debates (1850) p. 1312.

It will thus be seen that, by the phrases originally used and finally reworded, the framers of our Constitution intended to permit the law-making body to render ineligible those so convicted. It was suggested at oral argument that this has to do only with punishment,

and has no reference to qualifications for office. Whether the law-making body has power, independently of this clause, to deprive of such privileges as a part of the punishment, we need not here decide. It is plain that this clause does give power to prescribe as a qualification for office that the officer shall not have been convicted of an infamous crime, and this wholly apart from any question of punishment. Because deprivation of civil privileges is used as a punishment, it does not follow that every deprivation is punishment in the sense of being *ex post facto.*

It was adjudged in *Ex parte Wilson* (1884), 114 U. S. 417, 5 Sup. Ct. 935, 29 L. Ed. 89, that a crime punishable for a term of years in the penitentiary at hard labor was an infamous crime within the meaning of the Fifth Amendment of the Constitution of the United States. To the same effect is *Mackin* v. *United States* (1885), 117 U. S. 348, 6 Sup. Ct. 777, 29 L. Ed. 909. This definition of "infamous crime" has been adopted by the courts of this state. *Crum* v. *State* (1897), 148 Ind. 401, 409.

Now, §1 of chapter 83, Acts 1921 p. 179, *supra,* provides: "That it shall hereafter be deemed an indispensable qualification for persons to hold any office within the State of Indiana either by election or appointment, that such persons shall never have evaded or have been convicted of evading the selective service act of the United States or of any conspiracy or attempt to defraud the government of the United States, or of any seditious utterances in violation of any of the laws of the United States or of any other crime against the laws of the United States where the sentence imposed therefor exceeded six months."

We do not stop to inquire whether the crimes designated are all infamous. It is to be observed, however, that this section specifies "sentence" exceeding six

months.   It is obvious that a "sentence" exceeding six months, without any indication as to where the imprisonment is to be, is not an apt designation of an infamous crime.   There are, no doubt, many violations of the federal law for which the imprisonment might exceed six months in jail, which, of course, would not come within the definition of infamous crimes.   It thus appears that our lawmaking body in enacting chapter 83, *supra,* did not give very close attention to the mandate of Art. 2, §8 of our Constitution.   It seems to have intended to include persons not guilty of infamous crimes.   It is of no consequence, for the purposes of this case, whether chapter 83, *supra,* is valid or void, because we have concluded that clause 3 of §7008 Burns 1914, *supra,* is an execution of Art. 2, §8, of our Constitution.   The legislature, by making this a ground of contest, must have had in view the idea that any one who had been convicted of an infamous crime should be ineligible to hold office.

It was suggested at oral argument that the power of the legislature is limited to infamous crimes against the laws of the state.   That is to say, those guilty of

5.   infamous crimes against the laws of the United States and sister states, are eligible; while those guilty of infamous crimes against the laws of this state, are ineligible.   We cannot assent to the proposition that the framers of our Constitution intended a thing so anomalous, illogical and unjust.

We hold that, by clause 3 of §7008 Burns 1914, *supra,* a person who has been convicted of an infamous crime within the definition hereinbefore set out, either against the laws of the state, the United States, or a sister state, is disqualified for office in this state.

The judgment of the trial court is reversed, with instructions to overrule the demurrer to the complaint.